**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
IN RE: SINUS BUSTER PRODUCTS
CONSUMER LITIGATION

                                         **MEMORANDUM OF**
                                         **DECISION AND ORDER**
                                       12-CV-2429 (ADS)(AKT)


------------------------------------------------------------X
<u>**APPEARANCES:**</u>

**FARUQI & FARUQI, LLP**
*Co-Lead Interim Class Counsel*
369 Lexington Avenue, 10th Floor
New York, New York 10017
       By: Antonio Vozzolo, Esq.
           Courtney Maccarone, Esq., Of Counsel

**BURSOR & FISHER, P.A.**
*Co-Lead Interim Class Counsel*
888 Seventh Avenue
New York, NY 10019
     By:  Scott A. Bursor, Esq.
       Joseph I. Marchese, Esq., Of Counsel

**TASHLIK GOLDWIN CRANDELL LEVY LLP**
*Attorney for the Defendant Hi-Tech Pharmacal, Inc.*
40 Cuttermill Road, Suite 200
Great Neck, NY 11021
       By: Jeffrey N. Levy, Esq., Of Counsel

**SPATT, District Judge**.

This case arose out of a putative consolidated class action filed against the Defendants Wayne Perry ("Perry"), Dynova Laboratories, Inc. ("Dynova"), SiCap Industries, LLC ("SiCap"), and Hi-Tech Pharmacal, Inc. ("Hi-Tech") (collectively, the "Defendants") in connection with their marketing and sale of a line of Sinus Buster products, which are over-the-counter nasal sprays.

On December 16, 2013, following six months of arms-length negotiations, Faruqi & Faruqi, LLP ("Faruqi & Faruqi") and Bursor & Fisher, P.A. ("Bursor & Fisher") (collectively, the "Settlement Class Counsel") and counsel for Hi-Tech reached a proposed settlement. The settlement provides the proposed class, among other things, (i) a full monetary refund of the actual purchase price of the Sinus Buster products that they purchased or, in the alternative, $5.00 per Sinus Buster product purchased up to two Sinus Buster products ($10.00 in total); (ii) certain remedial measures; (iii) attorneys' fees, costs and expenses in the amount of $250,000 that are independent of the common fund established for settlement; and (iv) an incentive award of $2,500 for each of the named Plaintiffs.

Presently before the Court are two motions. First, the Plaintiffs seek a final order, which certifies a settlement class and approves the class settlement. Second, the Settlement Class Counsel seek an order awarding attorneys' fees, costs and expenses, and incentive fee awards. For the reasons set forth below, both motions are granted in their entirety.

## I.  BACKGROUND

### A. Underlying Facts

Although the parties' familiarity with the underlying facts and procedural history of the case is assumed, a brief review is in order.

This case arose out of allegations that the Defendants engaged in unfair and deceptive marketing practices in connection with their line of Sinus Buster products. Sinus Buster products are a line of drugs containing Capsaicin, an ingredient in hot cayenne peppers, which Defendants claim also treats, among other things, sinus congestion. (Consolidated Compl. at ¶ 3.) The Defendant Hi-Tech is a Delaware Corporation, which acquired Sinus Buster products that it continues to market and sell. (Id. at ¶ 13.) The Defendant SiCap is a limited liability company, which designed and developed Sinus Buster products. (Id. at ¶ 14.) The Defendant Perry is the creator and developer of the Sinus Buster products, and was, until 2010, the founder and CEO of Defendant SiCap. (Id. at ¶ 12.) The Defendant Dynova Laboratories is a Delaware Corporation, which, in 2008, acquired SiCap and its line of Sinus Buster products. (Id. at ¶ 15.)

On May 15, 2012 and June 8, 2012, respectively, David Delre ("Delre") (Case No. 12-CV-2429). and Mathew Harrison ("Harrison") (Case No. 12-CV-2897), both of whom were consumers that purchased Sinus Buster products for personal use, commenced separate putative class actions against the Defendants.

On December 17, 2012, the Court granted the Delre and Harrison's (collectively, the "Plaintiffs'") motion pursuant to Fed. R. Civ. P. 42(a)(2) and 23(g) to consolidate their actions and to appoint Faruqi & Faruqi and Bursor & Fisher as co-lead interim class counsel. (See Dkt. No. 54.)

On January 9, 2013, the Plaintiffs filed a consolidated putative class action complaint, which asserted claims against the Defendants for violation of (i) the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et. seq.*, (ii) for unjust enrichment, (iii) common law fraud, (iv) breach of express warranty, (v) breach of implied warranties of fitness and merchantability, (vi) the New Jersey Consumer Fraud Act, N.J.S.A. § 58:8-1, *et seq.,* (vii) the Minnesota private attorney

3

general statute, Minn. Stat. § 8.31, *et seq.*, (viii) and the consumer fraud statutes of the fifty states. (Id. at ¶ 9.) The thrust of these claims is that the Defendants misled consumers into believing that Sinus Buster products were approved by the FDA and that the Defendants mischaracterized the products as "homeopathic" solely to avoid FDA regulations. (Id. at ¶ 8–9.)

Thereafter discovery commenced, and the parties produced documents and responded to written discovery requests and interrogatories. (See generally Dkt. Nos. 59–85.) During this period, the Plaintiffs allege that they reviewed "thousands of documents" which were produced by Hi-Tech. (See Vozzolo Decl. at ¶ 43.)

On January 25, 2013, the Defendant Dynova filed a voluntary Chapter 7 bankruptcy petition in the District of New Jersey (13-cv-11415). As a result, this Court issued an automatic stay with respect to all litigation involving Dynova. (Dkt. No. 60.) The Plaintiffs sought relief from the automatic stay in the bankruptcy action, which was denied by a bankruptcy court in the District of New Jersey. (Vozzolo Decl. at ¶¶ 40-43.) However, the trustee in the bankruptcy action turned over approximately 44,000 pages of documents to the Plaintiffs related to their claims against the Defendants. (Id.)

**B. Terms of the Settlement**

On June 19, 2013, Settlement Class Counsel and counsel for Hi-Tech initiated settlement discussions with respect to the remaining litigation without the Defendant Dynova. (Id. at ¶ 44.) On December 16, 2013, after six-months of arms-length negotiations under the guidance of Magistrate Judge Tomlinson, Hi-Tek and Settlement Class Counsel agreed on the terms of a settlement. (Id.)

The proposed settlement resolves the claims of individuals in the United States who purchased Sinus Buster products on or after March 7, 2012 and before February 20, 2014.

(Revised Preliminary Approval Order at ¶ 7, Dkt. No. 95.)  Pursuant to the settlement agreement, Hi-Tech will offer a full monetary refund for any Settlement Class members who submit a valid claim form along with proof of purchase.  (Settlement Agreement at ¶ 64, Dkt. No. 88, Ex. 1.) For those without documentation of the purchase price, Hi-Tech will offer claimants $5.00 per Sinus Buster Product for up two Sinus Buster Products.  (Id.)

The proposed settlement also directs Hi-Tech to undertake certain remedial measures in connection with its marketing of Sinus Buster productions.  In particular within one year of the effective date of the settlement agreement, Hi-Tech is required to, among other things: (1) "discontinue the marketing and sale of Sinus Buster Mild, Cold Buster, and Headache Buster Products"; (2) add certain language to the packaging of Sinus Buster products and Hi-Tech's consumer facing website; and (3) prepare Sinus Buster products "in accordance with traditional homeopathic practices and/or methods."  (Id. at ¶ 63.)

The Defendants Perry, Dynova, and Sicap Industries, LLC (who has not appeared in this case) are not parties to the settlement agreement.  However, pursuant to the agreement, the Plaintiffs will execute a stipulation of dismissal with Perry and file a notice of voluntary dismissal of their claims against Sicap. (Id. at ¶ 31.)  Perry and Hi-Tech will execute a stipulation of dismissal with respect to their cross-claims against each other.  (Id.)  If the settlement agreement is approved, Dynova, who is not referenced in the settlement agreement, will remain a Defendant in this action pending the outcome of its separate bankruptcy action pursuant to the terms of the automatic stay.  (See Notice of Bankruptcy Filing and Automatic Stay, Dkt. No. 60.)

On February 4, 2014, the Court issued an order which preliminarily approved the settlement agreement and, among other things, provisionally certified a nationwide settlement class, approved the procedure and forms of notice, set a June 6, 2014 deadline for submitting

objections to the settlement, and set a July 17, 2014 deadline for submitting claim forms to obtain relief under the settlement. (Revised Preliminary Approval Order at ¶¶ 7, 15, 17, Dkt. No. 95.)

Prior to the June 6, 2014 deadline, no potential class member objected to or opted out of the settlement. (Notice of Non-opposition to Mot. For Final Approval, Dkt. No. 101.) On June 27, 2014 the Court held a hearing on the motion for final approval of the class action settlement, during which no objectors appeared. At the hearing, Settlement Class Counsel represented that as of June 27, 2014, 2,900 individuals had submitted claims to obtain relief under the settlement. (Fairness Hearing Tr: 5:14–6:13.) The Court is not aware of how many individuals ultimately submitted claim forms to obtain relief under the settlement prior to the July 17, 2014 deadline.

## II. DISCUSSION

### A. As to Whether the Court Should Certify the Proposed Settlement Class

#### 1. Legal Standard

Prior to approving a settlement, the Court should determine whether the proposed settlement class meets the requirements of Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620, 117 S. Ct. 2231, 2248, 138 L. Ed. 2d 689 (1997)

Rule 23(a) requires that all class actions satisfy the following requirements: "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical ... of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." Id.

Where, as here, a party seeks to certify a class under Rule 23(b)(3), a party must also show that (1) "[c]ommon questions . . . 'predominate over any questions affecting only individual members'" ("predominance requirement"); and (2) class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." <u>Id.</u>  This rule is designed to "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." <u>Yang v. Focus Media Holding Ltd.</u>, No. 11 CIV. 9051 (CM), 2014 WL 4401280, at *13 (S.D.N.Y. Sept. 4, 2014)

### 2. Rule 23(a) Requirements

#### a. Numerosity

"Numerosity is presumed at a level of 40 members."  <u>Consol. Rail Corp. v. Town of Hyde Park</u>, 47 F.3d 473, 483 (2d Cir. 1995).  Here, the proposed settlement class includes thousands of consumers nationwide who purchased Sinus Buster products between March 7, 2012 and February 20, 2014. Therefore, the proposed class satisfies the "numerosity requirement."

#### b. Commonality

The proposed class also meets the "commonality requirement."  A court may find a common issue of law or fact if plaintiffs "identify some unifying thread among the members' claims."  <u>Dupler v. Costco Wholesale Corp.</u>, 249 F.R.D. 29, 37 (E.D.N.Y. 2008) (internal quotation marks and citations omitted). Notably, a common issue of law can be found even though there exists "some factual variation among class members' specific grievances."  <u>Id.</u> (internal quotation marks and citations omitted).  Further, "[e]ven a single common legal or

factual question will suffice." Lizondro-Garcia v. Kefi LLC, 300 F.R.D. 169, 175 (S.D.N.Y. 2014) (internal quotation marks and citations omitted).

Here, the Plaintiffs allege numerous common questions, including, among others: (a) whether the Sinus Buster products were effective for their advertised purpose; (b) whether the Defendants advertised or marketed the Sinus Buster Products in a way that was false or misleading; and (c) whether the Defendants concealed from the Plaintiffs and other members of the proposed settlement class that the Sinus Buster products did not conform to their stated representations. Accordingly, the commonality requirement is satisfied here. See, e.g, In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 158 (S.D.N.Y. 2011) (finding that a proposed settlement class action against the defendants for misrepresentations in a prospectus satisfied the "commonality" and "typicality" requirements because "each class member's claim arises from the same course of events and each class member must make similar legal arguments to prove the defendants' liability.")

### c. Typicality

"Typicality ... is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Kelen v. World Fin. Network Nat. Bank, No. 12-CV-5024 (VSB), 2014 WL 3893081, at *5 (S.D.N.Y. July 28, 2014) (citing Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997)). The requirement is intended to "ensure[] that maintenance of a class action is economical and that the named plaintiff's claims and the class claims are so interrelated that the interest of the class members will be fairly and adequately protected in their absence." Id. (internal quotation marks and citations omitted).

Here, the Plaintiffs and the proposed class members' claims arise out of the same representations made by the Defendants about their Sinus Buster products. As such, the Court finds that the proposed settlement class satisfies the typicality requirement. See, e.g., id. (finding that "typicality" requirement was satisfied based, in part, on "[t]he allegations put forth in support of the named Plaintiffs' position are the exact same that the other putative class members would rely on to establish inadequate disclosures under the contract"); Yang v. Focus Media Holding Ltd., No. 11 CIV. 9051 CM GWG, 2014 WL 4401280, at *12 (S.D.N.Y. Sept. 4, 2014) (finding that "typicality" requirement was satisfied, in part, because "[a]ll Class Members purchased ADSs during the Class Period and allegedly sustained injury due to the artificial inflation of the price of those securities that was caused by Defendants' alleged material misrepresentations throughout the Class Period.").

### d. Adequacy of the Representation

The adequacy requirement of Rule 23(a)(4) involves the inquiry as to "whether: (1) Plaintiff's interests are antagonistic to the interests of the other members of the Class; and (2) Plaintiff's counsel are qualified, experienced, and capable of conducting the litigation." Yang, 2014 WL 4401280 at *12 (citing Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000)). Both requirements are satisfied here.

With respect to the first requirement, the Court finds that the Plaintiffs' interests are aligned with the interests of the proposed class because their claims arise from the same course of conduct by the Defendants—namely, the Defendants' alleged misrepresentations in connections with its marketing of Sinus Buster products. See, e.g., id. ("Plaintiff, like all Class Members, purchased Focus Media ADSs at artificially inflated prices during the Class Period as a result of Defendant'' alleged materially false and misleading statements and was damaged

thereby."); <u>Kelen</u>, 2014 WL 3893081 at *6 ("Resolution of each putative class member's claims will concern the content of the credit-card statements and other disclosures each member received from [the] Defendant or the amounts assessed and paid in finance charges to the Defendant."). Further, each member of the putative class has the same interest in maximizing the aggregate amount of class-wide damages. Therefore, there is no divergence of interests between the Plaintiffs and the other members of the proposed class.

In addition, the Court finds that the second element to be met because the attorneys seeking to represent the proposed settlement class are "experienced in the field of consumer protection law, and have participated in numerous consumer protection class actions." (<u>See</u> Decl. of Joseph I. Marchese, Ex. 1; Decl. of Antonio Vozzolo, Ex. A.)

### 3. Rule 23(b) Requirements

#### a. Predominance

To satisfy predominance, "a plaintiff must show that those issues in the proposed action that are subject to generalized proof outweigh those issues that are subject to individualized proof." <u>In re Advanced Battery Technologies, Inc. Sec. Litig.</u>, 298 F.R.D. 171, 182 (S.D.N.Y. 2014) (citing <u>In re Salomon Analyst Metromedia Litig.</u>, 544 F.3d 474, 480 (2d Cir.2008)) (internal quotation marks omitted). The Supreme Court has noted that this test is "readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." <u>Kelen</u>, 2014 WL 3893081 at *6 (citing <u>Amchem</u>, 521 U.S. at 623, 117 S.Ct. 2231).

The instant case is a consumer fraud case, and the questions of law and fact central to the proposed class member's claims against the Defendants are subject to "generalized proof"— namely, whether the Defendants misrepresented the effectiveness and quality of the Sinus Buster products sold in the United States. Therefore, the Court finds that common questions of law and

fact "predominate over questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3);

See, e.g., In re Advanced Battery Technologies, Inc. Sec. Litig., 298 F.R.D. at 182 ("There are

questions of law and fact common to the Settlement Class that predominate over any individual

questions, specifically whether the . . . Defendants' alleged actions, which were centralized and

uniform, violated federal securities laws and whether those violations were knowing or

reckless.");  Yang v. Focus Media Holding Ltd., 2014 WL 4401280 at *13 ("Because the central

and predominant focus of the action is Defendants' alleged fraudulent conduct, each Class

Member is similarly situated and common questions predominate over individual questions.").

### b. Superiority

"Class treatment is often deemed superior in negative value cases, in which each

individual class member's interest in the litigation is less than the anticipated cost of litigating

individually."  In re Advanced Battery Technologies, Inc. Sec. Litig., 298 F.R.D. at 182 (internal

quotation marks, citations, and alterations omitted); see also Amchem, 521 U.S. at 617, 138 L.

Ed. 2d 689 (1997) ("The policy at the very core of the class action mechanism is to overcome the

problem that small recoveries do not provide the incentive for any individual to bring a solo

action prosecuting his or her rights.")

The instant case presents the classic "negative value" case because there are thousands of

potential plaintiffs and each individual plaintiff's claims is worth a small amount—at most what

they paid for a Sinus Buster product, which were sold at retail for around "five dollars."

(Consolidated Compl. at ¶ 208.)  Thus, as a practical matter, absent use of the class action

device, it would be too costly and inefficient for any individual consumer to finance a law suit

asserting misrepresentation and fraud claims through trial and appeal.  See, e.g., Yang, 2014 WL

4401280 at *13 ("Here, the utility of presenting the claims asserted through the class action

method is substantial since the Class Members who have been injured number in the thousands, but most have not been damaged to a degree that would induce them to institute litigation on their own behalf."); Kelen v. World Fin. Network Nat. Bank, No. 12-CV-5024 VSB, 2014 WL 3893081, at *7 (S.D.N.Y. July 28, 2014) ("First, litigation by way of a class action is more economically sensible due to the relatively modest size of any individual's recovery."); In re Advanced Battery Technologies, Inc. Sec. Litig., 298 F.R.D. at 182 (S.D.N.Y. 2014) ("Members of the Settlement Class are not likely to (and many do not have) an interest or the means to prosecute an individual case against the . . . Defendants.").

In addition, the class device would provide the most efficient method of adjudicating the proposed class members' claims because there are multiple common issues present in the instant case.  Therefore, the class action device will prevent inefficient and inconsistent outcomes associated with multiple litigations involving the same set of facts.  See, e.g., Yang, 2014 WL 4401280 at *14 ("Without the settlement class device, [the] Defendant could not obtain a Class-wide release, and therefore would have had little, if any, incentive to enter into the Settlement. Moreover, certification of a class for settlement purposes will enable Lead Counsel to handle the administration of the Settlement in an organized and efficient manner."); Reade-Alvarez v. Eltman, Eltman & Cooper, P.C., 237 F.R.D. 26, 33 (E.D.N.Y. 2006) ("Concentration of litigation in this forum will prevent the inefficiencies of multiple litigations that might stand in the way of a beneficial comprehensive settlement, such as the one currently before the Court.").

Accordingly, the proposed class satisfies both prongs of the Fed. R. Civ. Pr. 23(b)(3). Because all of the requirements of Fed. R. Civ. P. 23 have been met, the Court grants the Plaintiffs' motion for certification of the proposed settlement class.

**B.  As to Whether the Court Should Approve the Settlement As Fair and Reasonable**

### 1. Legal Standard

Under Rule 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). When determining whether to approve a settlement pursuant to Rule 23(e) courts are required to ensure that the settlement is "procedurally and substantively fair." Yang, 2014 WL 4401280 at *4.

"The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation." In re Advanced Battery Technologies, Inc. Sec. Litig., 298 F.R.D. 171, 174 (S.D.N.Y. 2014).  Therefore, "procedural" and "substantive" fairness should be examined "in light of the strong judicial policy in favor of settlement of class action suits." Id. (quoting Aponte v. Comprehensive Health Mgmt., Inc., No. 10 Civ. 4825 (JLC), 2013 WL 1364147, at *2 (S.D.N.Y. Apr. 2, 2013)) (internal quotation marks, citations, and alterations omitted).

To determine "procedural fairness," "courts examine the negotiating process leading to the settlement." Yang, 2014 WL 4401280, at *4 (S.D.N.Y. Sept. 4, 2014) (citing Wal–Mart Stores, Inc. v. Visa U.S.A., 396 F.3d 96, 116 (2d Cir. 2005)).  Where a settlement is the "product of arm's length negotiations conducted by experienced, capable counsel," it enjoys a "presumption of correctness." Id. (citation omitted); see also Dupler v. Costco Wholesale Corp., 705 F. Supp. 2d 231, 238 (E.D.N.Y. 2010) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery.") (citations and internal quotation marks omitted).

In determining the "substantive fairness" of a settlement, a court may look to the factors set forth in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir.1974) (the "Grinnell factors"). These factors are: (a) the complexity, expense and likely duration of the litigation; (b) the reaction of the class to the settlement; (c) the stage of the proceedings and the amount of discovery completed; (d) the risks of establishing liability, damages, and maintaining the class action through the trial; (e) the ability of the defendants to withstand a greater judgment; (f) the range of reasonableness of the settlement fund in light of the best possible recovery and all attendant risks of the litigation. In re Advanced Battery Technologies, Inc. Sec. Litig., 298 F.R.D. at 175 (citing Grinnell Corp., 495 F.2d at 463).

For the reasons set forth below, the Court finds the proposed settlement agreement to be both "procedurally" and "substantively" fair.

**2. Procedural Fairness**

The Court finds that the settlement in this case was reached after arm's length negotiations with Settlement Class Counsel and counsel for the Defendant Hi-Tech. As described above, both Faruqi & Faruqi and Bursor & Fisher have considerable experience in complex litigation and consumer class actions. (See Joseph I. Marchese Decl., Ex. 1; Antonio Vozzolo Decl., Ex. A.) In addition, the settlement was reached after nearly a year of discovery, during which the parties exchanged, among other things, thousands of documents and verified interrogatories. (Vozzolo Decl. at ¶ 28.) The negotiations lasted six months, involved the exchange of significant information between the Settlement Class Counsel and counsel for the Defendant Hi-Tech, and were undertaken with the assistance of Magistrate Judge Tomlinson. (Id. at ¶ 47.) Therefore, the Court concludes that the settlement negotiations satisfied "procedural fairness." See Dupler, 705 F. Supp. 2d at 239 (finding settlement to be

"procedurally fair" because, among other things, the plaintiffs' counsel had "considerable experience in complex litigation," "negotiations lasted six months," and "several drafts were exchanged as the precise wording of the Settlement was negotiated").

### 3. Substantive Fairness

The Court has reviewed the settlement's substantive terms in light of the <u>Grinnell</u> factors. As set forth below, the Court concludes that the settlement is substantively fair, reasonable, and adequate.

### a. The Complexity, Expense and Likely Duration of the Litigation

If the litigation continued, the parties would have to undergo the time and expense of deposition discovery, contest motions for class certification, and a likely motion for summary judgment by the Defendants. (Vozzolo Decl. at ¶ 68.) Moreover, there is a possibility that the discovery would be delayed further should one of the parties file an interlocutory appeal of the Court's certification decision pursuant to Fed. R. Civ. P. 23(f). Discovery could therefore take years at great expense. Further, the Defendants and the Plaintiffs would likely have to obtain experts to establish both liability and damages. (<u>Id.</u>) A trial consisting of a "battle of experts" as would be complex and lengthy, with an uncertain outcome. (<u>Id.</u>) Under these circumstances, the Court finds that the complexity, expense, and likely duration of the litigation to weigh in favor of settlement. <u>See</u> <u>Dupler</u>, 705 F. Supp. 2d at 239.

### b. Reaction of the Class to the Settlement

Courts have found this factor to weigh in favor of approval where the majority of class members have not objected to or opted out of a settlement. <u>See, e.g.,</u> <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d 96, 118 (2d Cir. 2005) ("But here, the absence of substantial opposition is indicative of class approval[.]"); <u>Dupler</u>, 705 F. Supp. 2d at 239 ("Of the

11,800,514 class members, only 127 opted out and 24 objected. Such a small number of class members seeking exclusion or objecting indicates an overwhelmingly positive reaction of the class."); In re MetLife Demutualization Litig., 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) ("This proposed Settlement has been well received by the class: Five objections to the proposed Settlement were submitted by six of the approximately 11 million members of the federal and state classes—a rate of objection of well below .000001%. This ratio of objectors compares favorably with settlements approved in other class actions.")

Here, no class member opted out of the class and no objections were lodged to the settlement either before or at the fairness hearing on June 27, 2014. (See Levy Decl. at ¶¶ 2–3, Baldwin Decl. at ¶¶ 12, 13.)  Therefore, the Court finds this factor to weigh heavily in favor of the substantive fairness of the settlement.

### c. The Stage of the Proceedings and the Amount of Discovery Completed

Under this factor the relevant inquiry is "is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."  In re AOL Time Warner, Inc., No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006).  The parties "need not have engaged in extensive discovery as long as they have engaged in sufficient investigation of the facts to enable the Court to 'intelligently make an appraisal' of the settlement." Id. (quoting In re Austrian & German Holocaust Litig., 80 F.Supp.2d 164, 176 (S.D.N.Y. 2000)); see also In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493 (VB), 2013 WL 4080946, at *7 (S.D.N.Y. May 30, 2013) (finding the factor to weigh in favor of approval where "[a]lthough the parties have not engaged in extensive discovery . . . the plaintiffs conducted an investigation prior to commencing the action, retained experts, and engaged in confirmatory discovery in support of

the proposed settlement"); <u>Charron v. Pinnacle Grp. N.Y. LLC</u>, 874 F. Supp. 2d 179, 195 (S.D.N.Y. 2012) (finding this factor to weigh in favor of approval where "Class Counsel undertook a comprehensive pre-suit investigation lasting over a year" and "Class Counsel and Defendants engaged in certification discovery involving the exchange of documents and several depositions").

In the instant case, although discovery had yet to be completed, the Court finds that the litigants had conducted meaningful pre-trial discovery. In particular, prior to filing a consolidated class complaint, the Plaintiffs conducted an "extensive" investigation. During discovery, the Plaintiffs reviewed thousands of pages of the Defendants' documents, engaged in a substantial motion practice in the bankruptcy action of the Defendant Dynova, and exchanged written discovery requests and responses. (Vozzolo Decl. at ¶¶ 18–44.) Therefore, the Court finds that the litigation reached a sufficiently advanced stage for the plaintiffs to have "gauge[d] the strengths and weaknesses of their claims." <u>See</u> <u>In re AOL Time Warner, Inc.</u>, 2006 WL 903236 at *10 (Although discovery had not been completed prior to the Settlement, Plaintiffs had conducted meaningful pre-trial discovery and had engaged in sufficient trial preparation to appraise their likelihood of success.") Accordingly, the third factor also weighs in favor of settlement.

### d. The Risks Related to Liability, Damages, and Trial

In assessing the risks that a putative class would face if there were further litigation, courts must consider "legal theories and factual situations without the benefit of a fully developed record." <u>Id.</u> at *11. Therefore, courts must not "decide the merits of the case." <u>Id.</u> (quoting <u>Carson v. American Brands, Inc.</u>, 450 U.S. 79, 88 n. 14, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981)). Rather, "the Court need only assess the risks of litigation against the certainty of

recovery under the proposed settlement." Id. (quoting In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 459 (S.D.N.Y. 2004)).

Here, as described above, proof of liability and damages would require both parties to retain separate experts. Trial would be largely a "battle of the experts," where it would be difficult to predict whose testimony would be credited and accepted by the jury. See Shapiro v. JPMorgan Chase & Co., No. 11 CIV. 7961 CM, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) ("Proof of damages in complex class actions is always complex and difficult and often subject to expert testimony."); Ebbert v. Nassau Cnty., No. CV 05-5445 (AKT), 2011 WL 6826121, at *12 (E.D.N.Y. Dec. 22, 2011) ([L]iability and damages, this case likely would have ended up in a classic "battle of the experts." With that comes the inherent risk that a jury could be swayed by an expert for the Defendants who could minimize the amount of the Plaintiffs' losses.").

The proposed class members would also face a long road to an ultimate determination, including pre-trial motions for certification, summary judgment, trial, post-trial motions, the adjudication of the class member's individual claims, and likely an appeal. See Ebbert, 2011 WL 6826121 at *11 ("A trial would have required the Plaintiffs to put on extensive testimony, both fact and expert, explaining the details of these positions. In the absence of a settlement, the Plaintiffs could face a long road to an ultimate determination, including trial, post-trial motions, the adjudication of Class Members' individual claims and the inevitable appeal.").

Furthermore, the proposed class has not been certified for trial. Were the Court to reject the settlement, the parties would likely contest certification, which would present a possibility of decertification. A settlement therefore avoids the risk of decertification and thus weighs in favor of approval. Shapiro, 2014 WL 1224666, at *11 ("The possibility of decertification thus favors

settlement."); In re AOL Time Warner, Inc., 2006 WL 903236 at *12 ("[E]ven the process of class certification would have subjected Plaintiffs to considerably more risk than the unopposed certification that was ordered for the sole purpose of the Settlement.")

Therefore, the Court finds that the risks presented by further litigation weigh in favor of approving the settlement.

### e. The Defendant Hi-Tech's Ability to Withstand a Greater Judgment

Courts have recognized that a Defendants' ability to pay is much less important than the other Grinnell factors, especially where the other factors weigh in favor of approving the settlement. In re MetLife Demutualization Litig., 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) ("Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where the other Grinnell factors weigh heavily in favor of settlement approval.") (internal quotation marks and citations omitted); see also Shapiro, 2014 WL 1224666, at *11 ("JP Morgan's financial circumstances do not ameliorate the force of the other Grinnell factors, which lead to the conclusion that the settlement is fair, reasonable and adequate."); In re AOL Time Warner, Inc., 2006 WL 903236 at *12 ("However, the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair.").

Here, there is no evidence in the record related to the Defendant Hi-Tech's ability to withstand a judgment. Even if there were, the Court would not find the factor to be significant given that the other Grinnell factors weigh in favor of approving the settlement.

### f. The Range Of Reasonableness of the Settlement in Light of the Best Possible Recovery and Attendant Risks of Litigation

The Second Circuit has described the "range of reasonableness" as "a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in any litigation." In re Sony SXRD Rear Projection Television Class

Action Litig., No. 06 CIV. 5173 (RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008) (quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96 (2d Cir. 2005)) (internal quotation marks and alterations omitted).

Here, the proposed settlement agreement offers class members a full refund with proof of purchase or $5.00 per Sinus Buster Product for up to two products. (Settlement Agreement at ¶ 64, Dkt. No. 88 Ex. 1.) As of June 27, 2014, the date of the fairness hearing, 2,900 claimants had filed claims. (Fairness Hearing Tr. 5:14–24.) Therefore, at that time, the Defendant would be subject to potentially $30,000 in liability. However, the claims period ran until July 17, 2014, meaning the Defendants could potentially be subject to additional liability. In addition, the Defendant Hi-Tech has agreed to pay attorneys' fees and costs up to $250,000, as well as notice expenses, independent of the common fund established for class members. (See id.)

Although the settlement amount is not substantial, the Court finds that it offers a reasonable comprehensive remedy to class members. The class members would be unlikely to pursue the case individually as the costs of litigation described above would greatly outweigh any potential recovery. Indeed, the consolidated complaint did not seek punitive damages, emotional damages, or any other kind of monetary relief that would permit a court to grant damages to an individual plaintiff greater than the purchase price of the product. See In re Sony SXRD Rear Projection Television Class Action Litig., No. 06 CIV. 5173 (RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008) ("The Settlement in this case provides a comprehensive remedy to class members, guaranteeing cost-free and expedient in-home repair to members whose Televisions are diagnosed with a[n] . . . issue . . . . This remedy is well within the range of reasonableness in view of the risks of litigation that Plaintiffs face.")

Pursuant to the settlement agreement, the Defendant Hi-Tech also agreed to take certain remedial measures that will be of benefit to consumers. In particular, Hi-Tech is required to discontinue marketing certain products at issue and add language to the Sinus Buster products to allegedly make its purpose and effectiveness clearer to consumers. (Settlement Agreement at ¶ 64, Dkt. No. 88 Ex. 1.) The Court finds that these remedial measures also weigh in favor of the reasonableness of the settlement. See, e.g., Dupler v. Costco Wholesale Corp., 705 F. Supp. 2d 231, 241 (E.D.N.Y. 2010) (finding non-monetary benefits, including a change in the defendant's policy and providing for additional disclosures, "weigh in favor of settlement approval."); Velez v. Novartis Pharm. Corp., No. 04 CIV 09194 CM, 2010 WL 4877852, at *15 (S.D.N.Y. Nov. 30, 2010) ("This substantial programmatic relief—a primary focus of the litigation—will provide just the sort of significant benefit for Novartis' employees for years to come that Plaintiffs sought all along."); In re Currency Conversion Fee Antitrust Litig., 263 F.R.D. 110, 124 (S.D.N.Y. 2009) aff'd sub nom. Priceline.com, Inc. v. Silberman, 405 F. App'x 532 (2d Cir. 2010) ("The Settlement includes improved disclosure obligations which enhance competition by giving card holders the ability to compare foreign currency conversion fees. Thus, these factors weigh strongly in favor of approval.").

Accordingly, in weighing the Grinnell factors, the Court finds the settlement amount and other relief to be fair and reasonable.

## C. As to Whether the Court Approved Notice Program Satisfies Due Process and Rule 23(e)

With respect to class certification, Rule 23(b)(3) requires the court to "direct class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." With respect to approving the settlement, Rule 23(e)(2) requires that a court must "direct notice in a reasonable manner to all

class members who would be bound by the proposal."  In addition, Due Process requires "that the notice to class members 'fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" Shapiro v. JPMorgan Chase & Co., No. 11 CIV. 7961 (CM), 2014 WL 1224666, at *16 (S.D.N.Y. Mar. 24, 2014) (quoting Consol. Edison, Inc. v. Northeast Utils., 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004)).

Where, as here, the parties seek to simultaneously certify a settlement class and to settle a class action, the elements of Rule 23(c) and 23(e) are combined. In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 448 (S.D.N.Y. 2004).  In such circumstances, Due Process and the Federal Rules require notice that is practical under the circumstances and does not require actual notice to each class member.  Shapiro, 2014 WL 1224666 at *16.

Here, pursuant to the Court's Order granting preliminary approval of the settlement, a settlement notice was published twice in the national edition of USA Today, once in People Magazine, and once in the U.S. edition of Time Magazine.  (Baldwin Decl. at ¶ 3). The settlement was also broadcast on the Internet, and the settlement administrator created a dedicated website and a toll-free number to respond to inquiries by potential class members.  (Id. at ¶ 3–10.)  The settlement website provided details about the settlement, key documents concerning the settlement, a copy of the claims form, and instructions for opting out of the settlement and objecting to the settlement.  (Id. at 4–10.)

The Court finds that this notice program satisfies the requirements of the Federal Rules and the Constitution. See In re Citigroup Inc. Bond Litig., 296 F.R.D. 147, 154 (S.D.N.Y. 2013) ("[T]he claims administrator mailed copies of the notice packet to almost 500,000 potential class members and informed the recipients of the date by which requests for exclusion were to be

received . . . . The notice also adequately informed the potential class members of the information required by Rule 23 . . . ."); In re Marsh & McLennan Companies, Inc. Sec. Litig., No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *13 (S.D.N.Y. Dec. 23, 2009) (finding notice program satisfactory where a notice of settlement was "published in the Wall Street Journal and transmitted over Business Wire" and mailed to all reasonably identifiable Class members").

**D. As to Whether the Court Should Approve Counsel's Attorneys' Fees**

**1. Request for Reimbursement of Expenses**

Here, the Settlement Class Counsel requests reimbursement of $61,371.99 in expenses associated with this litigation. "It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class." Yang v. Focus Media Holding Ltd., No. 11 CIV. 9051 (CM), 2014 WL 4401280, at *18 (S.D.N.Y. Sept. 4, 2014) (citing In re Flag Telecom Holdings, Ltd. Sec. Litig., No. 02-CV-3400 (CM), 2010 WL 4537550, at *1 (S.D.N.Y. Nov. 8, 2010)). Courts in this Circuit "normally grant expense requests in common fund cases as a matter of course" "so long as counsel's documentation of them is adequate." Id. (internal quotation marks and citations omitted).

In the instant case, both firms provide tables accounting for the expenses reasonably incurred in the prosecution of this action. (See Marchese Decl. at ¶ 6; Vozzolo Decl., Ex. C.) These expenses include costs for electronic legal research, courier services, court filing fees, travel expenses, and expert fees. (See id.) All of these expenses are of the type normally incurred in a complex litigation such as this one, and which are routinely approved by courts in this Circuit. See e.g., Yang, 2014 WL 4401280 at *19 (S.D.N.Y. Sept. 4, 2014) ("These expenses are of the type that law firms typically bill to their clients and include such things as: mediator fees, expert fees, computer research, photocopying, postage, meals, and court filing

fees."); In re Colgate-Palmolive Co. Erisa Litig., No. 07-CV-9515 (LS), 2014 WL 3292415, at

*8 (S.D.N.Y. July 8, 2014) ("The lion's share of these expenses was for experts (approximately

$490,000) and mediation (approximately $25,000), both critically important to this litigation.

Courts routinely award such costs."). The Settlement Class Counsel's motion for reimbursement

of expenses is therefore granted.

### 2. Legal Standard for Determining the Reasonableness of Attorneys' Fees

Under Fed. R. Civ. P. 23(h), in a "certified class action, court may award reasonable

attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." In

setting attorneys' fees in class actions, courts have used either the lodestar method or awarded

fees based upon a percentage of the common fund. Steinberg v. Nationwide Mut. Ins. Co., 612

F. Supp. 2d 219, 222 (E.D.N.Y. 2009) (Spatt, J.) Here, the latter method would be unworkable

because the exact amount paid into the common fund has yet to be determined. See id.

Therefore, the Court's analysis will be guided by the "lodestar" method.

The lodestar consists of the hours billed and multiplied by an appropriate hourly rate. In

re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493 (VB), 2013 WL 4080946, at *15

(S.D.N.Y. May 30, 2013). Once the initial rate has been determined, a court can in its discretion

increase the lodestar by applying a "multiplier" based on the "risk of the litigation, the

complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and

other factors." Shapiro v. JPMorgan Chase & Co., No. 11 CIV. 7961 CM, 2014 WL 1224666, at

*24 (S.D.N.Y. Mar. 24, 2014) (internal quotation marks and citations omitted). "There is a

'strong presumption' that the lodestar represents the appropriate award, though 'enhancements

may be awarded in rare and exceptional circumstances.'" Gesualdi v. Diversified Carting, Inc.,

No. CV 10-2561 (SIL), 2014 WL 5475357, at *3 (E.D.N.Y. Oct. 29, 2014) (quoting Trs. of

<u>Empire State Carpenters v. Manhattan Concrete Structures, Inc</u>., No. 13 CV 5557 (DRH), 2014 WL 4810262, at *6 (E.D.N.Y. Sept. 23, 2014).

In addition, where, as here, "the attorneys' fees are to be paid directly by defendant and, thus, money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members." <u>Dupler</u> 705 F. Supp. 2d at 243 (internal quotation marks and citations omitted); <u>see also</u> <u>Jermyn v. Best Buy Stores, L.P.</u>, No. 08 CIV. 214 (CM), 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012) ("Thus regardless of the size of the fee award the fee award does not reduce the recovery to the class. Under these circumstances, the danger of conflicts of interest between attorneys and class members is diminished.") (internal quotation marks, alterations, and citation omitted); <u>Ebbert v. Nassau Cnty.</u>, No. CV 05-5445 (AKT), 2011 WL 6826121, at *14 (E.D.N.Y. Dec. 22, 2011) (same).

### 3. Lodestar Calculation

The Settlement Class Counsel request attorneys' fees of $188,628.01, without costs. (Supplemental Vozzolo Decl. at ¶ 6.) They argue that $188,628.01 is presumptively reasonable when compared to Settlement Class Counsel's lodestar. (Memo of Law in Support of the Pls.' Mot. for Fees, at 14.) They allege that their total "lodestar" is $682,599.75, which they arrived at by multiplying their proposed billing rates by 1,415, the number of hours they worked on the case. (Vozzolo Decl. at ¶ 11.)

Although the Court applies a lower level of scrutiny to the settlement amount given that it is independent of the common fund established for class members, the Court still must assess the reasonableness of the proposed hourly rates and hours billed by the Settlement Class Counsel. <u>See</u> <u>Jermyn v. Best Buy Stores, L.P.</u>, 2012 WL 2505644 at *9. As is set forth below, the Court

declines to accept the Settlement Class Counsel's proposed "lodestar" because it is based on unreasonable hourly rates. However, even when viewed against the "lodestar" calculated using the Court's hourly billing rates, the proposed attorneys' fees are reasonable.

### a. Reasonable Hourly Rate

To arrive at an appropriate "lodestar," a court will multiply the number of reasonably hours billed by a reasonable billing rate. Spence v. Ellis, No. CV 07-5249 TCP ARL, 2012 WL 7660124, at *3 (E.D.N.Y. Dec. 19, 2012) report and recommendation adopted, No. 07-CV-5249 TCP, 2013 WL 867533 (E.D.N.Y. Mar. 7, 2013).

Under the "forum rule," courts "should generally use 'the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." Green v. City of New York, No. 05CV429SLTETB, 2010 WL 148128, at *4 (E.D.N.Y. Jan. 14, 2010) aff'd, 403 F. App'x 626 (2d Cir. 2010) (internal quotation marks and citations omitted). If the party seeking the award seeks rates higher than the hourly rates traditionally employed in the district, then that party "must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result." Id. (quoting Simmons v. New York City Transit Auth., 575 F.3d 170, 175 (2d Cir. 2009)).

Recent Eastern District cases have indicated that the range of appropriating billing rates is $200 – $375 for partners and $100 – $300 for associates. United States v. Jones, No. 11-CV-2869 (JFB), 2013 WL 6408639, at *3 (E.D.N.Y. Dec. 9, 2013) ("With respect to the appropriate hourly rate, as this Court has noted, recent Eastern District cases have indicated that the range of appropriate billing rates in this District is $200–$375 for partners."); see also Fastener Dimensions, Inc. v. Massachusetts Mut. Life Ins. Co., No. 12CV8918 DLC, 2014 WL 5455473,

at *10 (S.D.N.Y. Oct. 28, 2014) ("In the Eastern District of New York, courts have awarded $200–$300 for senior associates and $100–$200 for junior associates in ERISA suits and similar cases."); <u>Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. Thalle/Transit Const. Joint Venture</u>, No. 12-CV-5661 (JFB), 2014 WL 5343825, at *3 (E.D.N.Y. Oct. 20, 2014) ("As for associates, courts in this district have concluded that approximately $200 to $300 is a reasonable hourly rate for senior associates, and that $100 to $200 is a reasonable hourly rate for more junior associates.")

Here, Faruqi & Faruqi and Bursor & Fisher seek fees that are nearly triple the customary hourly rate awarded by courts in this district – both firms seek from $675 – $850 per hour for partners, $350 – $450 per hour for associates, and $180 – $315 per hour for paralegals. (Vozzolo Decl., Ex. B, Marchese Decl. at ¶ 5.) The Court finds that the firms do not make the "particularized showing" required to justify these rates.

Indeed, in consumer class action cases similar to the instant case, courts have applied the customary hourly rates described above. <u>See, e.g.</u>, <u>In re Nassau Cnty. Strip Search Cases,</u> No. 99-CV-2844 (DRH), 2014 WL 1338426 (E.D.N.Y. Apr. 2, 2014) ("The legal representation provided to the class has been first rate. To obtain such services locally would likely require the following hourly sums: $300 to $450 for a partner, $200 to $300 for an associate, and $70 to $90 for a paralegal."); <u>Green</u>, 2010 WL 148128 at *8 (granting an award of attorneys' fees in a class action of $300 – $375 per hour for partners; $150 – $200 per hour for associates; and $100 per hour for paralegals); <u>Steinberg v. Nationwide Mut. Ins. Co.</u>, 612 F. Supp. 2d 219, 224 (E.D.N.Y. 2009) (reducing lodestar figure because class action attorneys proposed hourly rates – ranging from $270 up to $500 for associates and $585 up to $790 for partners – "were are at the extreme high end of what courts in the Eastern District of New York typically award in complex cases").

Though the Court finds the instant case to be somewhat complex, there is nothing that distinguishes it from the above-discussed cases, which were, like the instant case, relatively straightforward class actions that involved document-intensive discovery but did not present legal questions that were particularly novel or complex. <u>See, e.g.</u>, <u>Green</u>, 2010 WL 148128 at *10 ("This Court notes that, for a class action, this case was neither particularly lengthy nor labor-intensive. Moreover, the legal questions raised in the case were neither novel nor particularly complex.").

Indeed, it appears from the time sheets submitted to the Court, that the bulk of the hours were billed by junior associates and a relatively junior partner. (<u>See</u> Vozzolo Decl., Exs. A, B; Marchese Decl. at ¶ 5, Ex. 1.) Even if the case had been staffed by more experienced attorneys, the level of difficulty of the case would not warrant applying anything other than the customary rates applied in this District. <u>See, e.g.</u>, <u>Gagasoules v. MBF Leasing LLC</u>, No. 08-CV-2409 (ADS), 2013 WL 1760134, at *4 (E.D.N.Y. Apr. 24, 2013) (Spatt, J.) (["T]he Court rejects the hourly rates provided by the Defendant and, in light of the Johnson factors outlined above, determines that the following hourly rates are reasonable in this case: (1) for Bressler and Skoff, as partners with 25 to 35 years of experience, $350 an hour; (2) for Lillienstein, as counsel with 20 years of experience, $300 an hour; and (3) for Chitou, as a summer associate, $100 an hour.")

Accordingly, the Court finds: (i) an hourly rate of $350 to be reasonable for the three partners in this case, Scott Bursor, Joseph Marchese, and Anthony Vozzolo; (ii) an hourly rate of $200 per hour for the associates in the case, most of whom it appears had less than three years of experience, to be reasonable; and (iii) an hourly rate of $100 per hour to be reasonable for the paralegals and support staff.

**b. Reasonable Number of Hours Billed**

In determining the reasonable number of hours billed, a court "looks to its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." Id. at *6 (quoting Clark v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992). It is up to counsel to provide contemporaneous records that detail the date, amount of time expended, and the nature of the work. Durso v. Nunzio & Sons, No. CV 13-5240 ADS GRB, 2014 WL 4774620, at *5 (E.D.N.Y. Aug. 18, 2014) report and recommendation adopted, No. 13-CV-5240 ADS GRB, 2014 WL 4773988 (E.D.N.Y. Sept. 24, 2014); see also Cho v. Koam Med. Servs. P.C., 52 4 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) ("The party seeking the award bears "the burden of documenting the hours reasonably spent by counsel[.]").

Where attorneys fail to provide adequate records, courts have, in their discretion, reduced the fees requested. See, e.g., Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) ("In light of Kirsch's submissions, we see no abuse of discretion in the adjustment of the rate to be paid for Wisehart's time or as to the 20% reduction for vagueness, inconsistencies, and other deficiencies in the billing records."); LV, 700 F. Supp. 2d at 526 (finding billing entries that "omit information about the subject matter of the work" and for "vague entries" justified "an across-the-board cut of 12 percent in [the plaintiffs' firms'] hours."); Spence v. Ellis, No. CV 07-5249 TCP ARL, 2012 WL 7660124, at *8 (E.D.N.Y. Dec. 19, 2012) report and recommendation adopted, No. 07-CV-5249 TCP, 2013 WL 867533 (E.D.N.Y. Mar. 7, 2013) ("In summary, taking into account the above considerations and in order to account for the instances of excess, block billing and vagueness, the court will exercise its discretion and reduce the number of overall hours for plaintiff's counsel and staff by 35%.").

However, where, as here, the settlement is not awarded from the "common fund," courts have provided less scrutiny to the attorneys' time entries. See Jermyn v. Best Buy Stores, L.P., No. 08 CIV. 214 CM, 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012) ("The attorneys' fees in this case will not be awarded from a 'common fund' created for the class as a whole. Thus regardless of the size of the fee award the fee award does not reduce the recovery to the class. Under these circumstances, the danger of conflicts of interest between attorneys and class members is diminished.") (internal quotation marks, alterations, and citations omitted); see id. (approving proposed attorneys' proposed lodestar as "reasonable" without analyzing the number of hours worked by counsel on each task); In re Citigroup Inc. Bond Litig., 988 F. Supp. 2d 371, 376 (S.D.N.Y. 2013) (applying a lower level of scrutiny to the attorneys' proposed "lodestar," and finding that counsel's commitment of 213,507 hours for filing two complaints, investigating claims for a period of two years, briefing dispositive motions, and reviewing 42.5 million documents "appears reasonable.").

Here, Faruqi & Faruqi and Bursor & Fisher allege that they billed a total of 1,415 hours during the course of this litigation. (Vozzolo Decl. at ¶ 11.) To that end, each firm provides an invoice that shows how many total hours each lawyer on the case billed. (See Vozzolo Decl., Ex. B; Marchese Decl. at ¶ 5.) However, the firms do not provide the details setting forth the date when these charges were incurred, the nature of each task that they performed, or the amount of hours spent on each task. (See Vozzolo Decl. at 88) (noting that Faruqi & Faruqi was not attaching a "full-detail invoice" to its motion due to "concerns of waiver of privilege and/or attorney work product.").

Ordinarily, such an omission would result in a substantial reduction of the number of hours worked. See, e.g., Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) ("In light of

Kirsch's submissions, we see no abuse of discretion in the adjustment of the rate to be paid for Wisehart's time or as to the 20% reduction for vagueness, inconsistencies, and other deficiencies in the billing records.").

However, because the attorneys' fees are not derived from the "common fund" and there have been no objections to the attorneys' fees, the Court will apply a less searching level of scrutiny in assessing whether the hours billed by Faruqi & Faruqi and Bursor & Fisher are reasonable. In so doing, the Court finds that 1,415 hours spent is reasonable considering that in connection with this case, the two firms, among other things, reviewed thousands of documents, retained the services of an expert, and conducted substantial motion practice. See Jermyn v. Best Buy Stores, L.P., 2012 WL 2505644 at *10 (finding 5,604 hours to be reasonable considering that "[c]ounsel have traveled throughout the country to take depositions, interviewed class members and other Best Buy customers, reviewed thousands of documents, and retained the services of experts to review and interpret substantial amounts of data that Best Buy produced.").

### c. Lodestar Calculation

In light of the Court's reductions to the Settlement Class Counsel's proposed attorneys' fees, the Court comes to a total lodestar of $319,342.5. Therefore, even when compared to the Court-calculated lodestar, $188,628.01, the proposed attorneys' fee in this case, is reasonable.

### 3. Other Factors Related to Attorneys' Fees

In determining whether proposed attorneys' fees are reasonable, the Court must also look to the factors set forth in Goldberger v. Integrated Res., Inc., 209 F.3d 43, 47 (2d Cir. 2000). Those factors include: "(1) counsel's time and labor; (2) the litigation's complexities and magnitude; (3) the litigation risks; (4) quality of representation; (5) the relationship of the

requested fee to the settlement; and (6) considerations of public policy." <u>Dupler</u>, 705 F. Supp. 2d at 243 (E.D.N.Y. 2010).

In addressing whether the settlement was reasonable, the Court found the first five factors set forth in <u>Goldberger</u> to weigh in favor of approval. *See supra* Section II(B)(2). Therefore, the Court finds these five factors to also weigh in favor of approving the proposed attorneys' fees.

In addition, the Court finds that consideration of public policy, the sixth factor of the <u>Goldberger</u> test, to weigh in favor of approval of the attorneys' fees. Public policy generally favors the award of reasonable attorneys' fees in class action settlements, especially where, as here, class members would be unlikely to pursue a case individually given that the costs substantially outweigh any potential recovery. <u>Jermyn v. Best Buy Stores, L.P.</u>, No. 08 CIV. 214 (CM), 2012 WL 2505644, at *12 (S.D.N.Y. June 27, 2012); <u>see also</u> <u>In re Nissan Radiator/Transmission Cooler Litig.</u>, No. 10 CV 7493 VB, 2013 WL 4080946, at *17 (S.D.N.Y. May 30, 2013) ("Public policy favors reasonable attorney fee awards to encourage attorneys to prosecute merit-based class actions on a contingent fee basis.") Thus, the Court finds this factor to also support the requested fees and costs requested here.

For the foregoing reasons, the Court approves the Settlement Class Counsel's request for attorneys' fees and costs.

**E. As to Whether the Court Should Approve the Proposed Incentive Fees**

In a class action, plaintiffs can request an "incentive award" to compensate them for "efforts expended for the benefit of the lawsuit." <u>In re Colgate-Palmolive Co. Erisa Litig.</u>, No. 07-CV-9515 (LS), 2014 WL 3292415, at *8 (S.D.N.Y. July 8, 2014) (quoting <u>Dornberger v. Metro. Life Ins. Co.</u>, 203 F.R.D. 118, 124 (S.D.N.Y. 2001)). Here, the two named Plaintiffs request $2,500 each as an incentive award for their work on behalf of the class. (The Pls.' Memo

of Law in Support of the Pls.' Mot. for Fees and Costs, at 24.)  Their efforts included, helping

counsel to prepare discovery responses, reviewing documents in the case, and communicating

regularly with counsel.  (Id.)

Courts in this circuit have approved greater incentive awards under similar

circumstances.  See, e.g., In re Colgate-Palmolive Co. Erisa Litig., 2014 WL 3292415 at *8

(approving award of $5,000 to each named plaintiff because "they reviewed draft pleadings and

motions, searched for and produced relevant documents, reviewed filings, and communicated

regularly with Class Counsel"); Dupler v. Costco Wholesale Corp., 705 F. Supp. 2d 231, 246

(E.D.N.Y. 2010) (approving $5,000 for one named plaintiff because she "reviewed the complaint

in the California Action and discussed the facts with counsel.").

Accordingly, the Court finds that an incentive award of $2,500 to each of the two Named

Plaintiffs is reasonable and approves the Plaintiffs' request.

### III.  CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Court approves the settlement agreement and grants the Settlement

Class Counsel's application for attorneys' fees and costs of $250,000.


**SO ORDERED.**
Dated: Central Islip, New York
November 10, 2014




_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge